UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

CURTIS SUMMIT,

                                          **Civil Case No.: 20-cv-4905 (PAE)**

                 Plaintiff,

          - against –

EQUINOX HOLDINGS, INC.,

                 Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x


## <u>PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT</u>


*/s/ Brittany Weiner*
Brittany Weiner, Esq.
Imbesi Law Group P.C.
1501 Broadway, Suite 1915
New York, New York 10036
Tel. (646) 767-2271
Fax. (212) 658-9177
brittany@lawicm.com
*Attorneys for Plaintiff*

## Table of Contents

**STATEMENT OF MATERIAL FACTS** .................................................................................... 1

    **I.**   **Plaintiff Curtis Summit** ......................................................................................... 1

    **II.**   **Discriminatory Treatment** ................................................................................... 1

    **III.**   **December 19, 2019 – Plaintiff's Lockers are Opened and his Personal Belongings are Tossed over the Floor** ...................................................................................... 3

    **IV.**   **Termination** ......................................................................................................... 4

**ARGUMENT** ............................................................................................................................ 5

    **I.**   **Summary Judgment Standard** ............................................................................. 5

        **i.**   **Courts Urge Caution in Granting Summary Judgment in Employment Discrimination Cases where Intent is at Issue** ................................................. 7

    **II.**   **Plaintiff's *Prima Facie* Case of Discrimination** ............................................. 9

        **i.**   **Inference of Discrimination** .............................................................................. 10

        **ii.**   **Plaintiff's Showing of Pretextual Termination** ............................................... 12

    **III.**   **Distinguishing Cases Relied Upon by Defendant** ........................................... 14

**CONCLUSION** ....................................................................................................................... 16

# Table of Authorities

## Cases

*300 Gramatan Ave. Assocs. V. State Div. of Human Rights,* 45 N.Y. 2d 176 (1978) ...................8
*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242 (1989) ...............................................................6
*Anyanwu v. City of New York,* 2013 WL 5193990 (S.D.N.Y. Sept. 16, 2013) ......................12
*Auletta v. Tully,* 576 F. Supp. 191, 195 (N.D.N.Y. 1983) .............................................................6
*Back v. Hastings on Hudson Union Free Sch. Dist.,* 365 F. 3d 107 (2d Cir. 2004) ...............11
*Bahnsen v. Town of Brookhaven,* 2019 WL 7575951 (E.D.N.Y. Dec. 16, 2019) ....................15
*Carlton v. Mystic Transp., Inc.,* 202 F. 3d 129 (2d. Cir. 2000) ..........................................9, 12
*Cronin v. Aetna Life Ins. Co.,* 46 F. 3d 196 (2d Cir. 1995) .....................................................10
*D'Cunha v. Genovese/Eckerd Corp.,* 479 F. 3d 193 (2d Cir. 2007) .........................................10
*Delville v. Firmenich Inc.,* 920 F. Supp. 2d 446 (S.D.N.Y. 2013) ...........................................7
*Dister v. Continental Group, Inc.,* 859 F. 2d 1108 (2d Cir. 1988) ..............................................8
*Duffy v. State Farm Mut. Auto. Ins. Co.,* 927 F. Supp. 587 (E.D.N.Y. 1996) .......................13
*Ehrbar v. Forest Hills Hosp.,* 131 F. Supp. 3d 5 (E.D.N.Y. 2015) ........................................12
*Epstein v. Kalvin-Miller Intern., Inc.,* 139 F. Supp. 2d 469 (S.D.N.Y. 2001), ......................13
*Fanelli v. New York,* 200 F. Supp. 3d 363  (E.D.N.Y. 2016); ..................................................7
*Fischl v. Armitage,* 128 F. 3d 50 (2d Cir. 1997) .......................................................................7
*Fressler v. New York City Dept. of Educ.,* 2012 WL 1038600 (S.D.N.Y. Mar. 29, 2012) .......13
*Gallo v. Prudential Residential Services,* 22 F.3d 1219 (2d Cir. 1994); ...................................8
*Gelb v. Bd. of Elections of the City of N.Y.,* 224 F. 3d 149 (2d Cir. 2000) ..............................7
*Gladstone v. Fireman's Fund Ins. Co.,* 536 F. 2d 1403 (2d Cir. 1976) .....................................6
*Gorzynski v. JetBlue Airways Corp.,* 596 F.3d 93 (2d Cir. 2010) .......................................8, 12
*Graziadio v. Culinary Inst. Of Am.,* 817 F. 3d 415 (2d Cir. 2016). .........................................13
*Hargett v. New York City Transit Authority,* 640 F. Supp. 2d 450 (S.D.N.Y. 2009) ..................9
*Hayut v. State Univ. of N.V.,* 352 F.3d 733 (2d Cir. 2003); .......................................................6
*Hazeldine v. Beverage Media Ltd.,* 954 F. Supp. 697 (S.D.N.Y. 1997) ....................................8
*Holtz v. Rockefeller & Co.,* 258 F. 3d 62 (2d Cir. 2001) ....................................................11, 12
*Howley v. Town of Stratford,* 217 F.3d 141 (2d Cir. 2000) .......................................................6
*Hurd v. JCB Intern. Credit Card Co. Ltd.,* 923 F. Supp. 492 (S.D.N.Y. 1996) ........................8
*Ireton-Hewitt v. Champion Home Builders Co.,* 501 F. Supp. 2d 341 (N.D.N.Y. 2007) ..........14
*Jacobsen v. New York City Health and Hospitals Corp.,* 22 N.Y. 3d 824 (2014) ......................6
*Jaroslawicz v. Seedman,* 528 F. 2d 727 (2d Cir. 1975). ...........................................................11
*Jimenez v. Donahoe,* 968 F. Supp. 2d 609  (S.D.N.Y. 2013). ....................................................7
*Kessler v. Westchester County Dept. of Social Services,* 461 F. 3d 199 (2d Cir. 2006). ..........14
*Knight v. U.S. Fire Ins. Co.,* 804 F.2d 911 (2d Cir. 1986); ........................................................8
*Lawrence v. State University of New York,* 2002 WL 31812700 (S.D.N.Y. Dec. 12, 2002) .......7
*Levitant v. Hilt N.Y. Waldorf LLC,* 2012 WL 414515 (S.D.N.Y. Feb. 6, 2012); ........................9
*Loeffler v. Staten Island Hosp.,* 582 F. 3d 268 (2d Cir. 2009). .................................................9
*Luciano v. Olsten Corp.,* 110 F.3d 210 (2d Cir. 1997). .......................................................9, 13
*Mandell v. County of Suffolk,* 316 F. 3d 368 (2d Cir. 2003) ...................................................15
*Matye v. City of New York,* 2015 WL 1476839 (E.D.N.Y. March 31, 2015) ..............................7
*McDuffee v. J.P. Morgan Chase Bank,* 35 Misc. 3d 1230 (Sup. Ct. 2012). ...............................8

*Miller v. National Ass'n of Securities Dealers, Inc.,* 703 F. Supp. 2d 230 (E.D.N.Y. 2010). ............. 10, 12

*Nationwide Life Ins. Co. v. Bankers Leasing Ass'n, Inc.,* 182 F.3d 157 (2d Cir. 1999) ............................ 6

*Owens v. Amtrak (National R.R. Passenger Corp.),* 1990 WL 104025  (S.D.N.Y. July. 19, 1990)............ 6

*Padilla v. Buffalo State College Foundation, Inc.,* 958 F. Supp. 124 (W.D.N.Y. 1997)............................ 7

*Piasecki v. Daugthers of Jacob Nursing Home, Inc.,* 808 F. Supp. 1136 (S.D.N.Y. 1992) ...................... 10

*Ramseur v. Chase Manhattan Bank,* 865 F. 2d 460 (2d Cir. 1989). .......................................................... 13

*Raspardo v. Carlone,* 770 F. 3d 97 (2d Cir. 2014); ................................................................................. 10

*Rosen v. Thornburgh,* 928 F.2d 528 (2d Cir. 1991). ................................................................................... 7

*Scalera v. Electrograph Systems, Inc.,* 848 F. Supp. 2d 352 (E.D.N.Y. 2012)............................................ 6

*Scaria v. Rubin,* 117 F.3d 652 (2d Cir. 1997) ............................................................................................ 9

*Smith v. North Shore-Long Island Jewish Health System,* 286 F. Supp. 3d 501 (E.D.N.Y. 2018)............ 11

*Sorlucco v. New York City Police Dept.,* 888 F. 2d 4 (2d Cir. 1989) ........................................................ 13

*Spiegel v. Schlhmann,* 604 F. 3d 72 (2d Cir. 2010). .................................................................................. 9

*St. Mary's Honor Center v. Hicks,* 509 U.S. 502 (1993). ..................................................................... 12, 13

*Sullivan v. NYC Department of Investigation,* 163 F. Supp. 3d 89 (S.D.N.Y. 2016) ................................ 15

*Sutera v. Schering Corp.,* 73 F. 3d 13 (2d Cir. 1995). ............................................................................ 9, 10

*Trachtenberg v. Department of Educ. Of City of New York,* 937 F. Supp. 2d 460 (S.D.N.Y. 2013).......... 10

*Wallace v. Esper,* 2019 WL 4805813  (S.D.N.Y. Sept. 30, 2019)............................................................. 16

*Weber v. Parfums Givenchy, Inc.,* 49 F. Supp. 2d 343 (S.D.N.Y. 1999)................................................... 13

*William J. Jenack Estate Appraisers & Auctioneers, Inc. v. Rabizadeh,* 22 N.Y. 3d 470 (2013) ............... 6

*Williams v. Regus Management Group, LLC,* 836 F. Supp. 2d 159 (S.D.N.Y. 2011)................................. 10

*Zimmerman v. Assocs. First Capital Corp.,* 251 F.3d 376 (2d Cir. 2001)................................................... 7

*Zuckerman v. City of New York,* 49 N.Y.2d 557 (1980); .............................................................................. 8

## Statutes

29 U.S.C. § 623(a)(1)................................................................................................................................... 9

Fed. R. Civ. P. 56(c) .................................................................................................................................... 5

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

CURTIS SUMMIT,

      **Civil Case No.: 20-cv-4905 (PAE)**

             Plaintiff,

      **<u>PLAINTIFF'S MEMORANDUM OF
LAW IN OPPOSITION TO
DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT</u>**

        - against –

EQUINOX HOLDINGS, INC.,

             Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

       Plaintiff Curtis Summit ("Plaintiff" or "Mr. Summit") submits this memorandum of law in opposition to Defendant Equinox Holdings, Inc.'s ("Defendant" or "Equinox") motion for summary judgment. Because genuine issues of material fact exist, Plaintiff respectfully requests that the Court deny Defendant's motion for summary judgment in its entirety.

<u>STATEMENT OF MATERIAL FACTS</u>

**I.     Plaintiff Curtis Summit**

       Plaintiff is a former professional boxer who worked at Equinox for approximately twenty years. JSUF ¶¶ 13-14. Plaintiff taught TKO Boxing classes at numerous Equinox fitness club locations in New York City. Joint Statement of Undisputed Facts ("JSUF") (Doc. No. 31) ¶¶ 19-20, Declaration of Curtis Summit ("Summit Decl."), ¶¶ 4, 6. At the time of termination, Plaintiff was nearly sixty (60) years old. JSUF ¶ 12.

**II.    Discriminatory Treatment**

Throughout Plaintiff's employment, he experienced discriminatory comments regarding his age. Defendant's managers and employees frequently asked Plaintiff about his age. Summit Decl. ¶¶ 7-11. Tracey Grossman, a supervisor and one of the individuals involved in the investigation and subsequent termination of Plaintiff, shortly after meeting Plaintiff, questioned his age and ability to work as a boxing instructor. Summit Decl. ¶ 9. Plaintiff experienced a change in Ms. Grossman's attitude towards him after learning his age. Summit Decl. ¶ 9. She became more aggressive in her supervision. Ex. 2, 94:7-11. As recently as the last night of his employment, Plaintiff was questioned about his age by Defendant's employee Will Diaz, while in the locker room shortly before the incident. *Id.* at ¶ 13; Ex. 2, 148:3-10 ("I found it kind of ironic that he actually asked about my age and how long I would probably be teaching. Then after my class, this is when I came downstairs and see my stuff scattered all over the floor."). Plaintiff was perplexed by the focus on his age. Summit Decl. ¶¶ 9, 12.

In addition to the age-related comments, Plaintiff received discriminatory treatment from his most recent supervisors. *Id.* at ¶¶ 14-15. Plaintiff was adamantly instructed to clean the studio (both before and after teaching classes). He had to do this before just about every class. Ex. 2, 63:23-25, 64:2. However, when Plaintiff spoke to other, younger, fitness instructors (some he believed to be in their twenties), they told him that they had not been instructed to perform similar tasks. *Id.* Plaintiff was also not offered training opportunities that were given to other, younger fitness instructors. *Id.* at ¶ 16. Defendant contends this was because Plaintiff did not frequently check his e-mail, however, when Plaintiff spoke to other employees, he was told that their managers provided them with career advancement opportunities. Plaintiff did not receive similar opportunities from management. *Id.* During discovery, Defendant produced e-mails that

were sent to Plaintiff during his employment. Ex. 2, 49:2-25, 50:2-19. Documents related to training opportunities were not produced.

Lastly, after Plaintiff's employment was terminated, he was replaced by younger employees. *Id.* at ¶ 37; JSUF ¶ 71; Exhibit 4. Defendant admits in both the JSUF and its responses to Plaintiff's requests to admit that "Where Defendant was able to obtain alternate Group Fitness Instructors to cover these classes, Group Fitness Instructors younger than Plaintiff taught those classes."

### III.    December 19, 2019 – Plaintiff's Lockers are Opened and his Personal Belongings are Tossed over the Floor

On December 19, 2019, after teaching a class at the Flatiron Club, three lockers containing Plaintiff's belongings were opened and his personal belongings were scattered across the men's locker room. *Id.,* at ¶¶ 20-21, 23. JSUF ¶ 35. Because of their earlier conversation, including age-related comments, Plaintiff noticed that Will Diaz was in the locker room before he taught his class. Summit Decl at ¶ 22.

Upon seeing his personal effects strewn across the floor, Plaintiff became very upset. *Id.* at ¶ 26. Even Equinox employee Hermann understood how Plaintiff could have been angry after walking into the locker room and finding his personal belongings on the floor. Ex. 3, 44:6-12. Plaintiff asked the locker room attendants what happened, but the locker room attendants told Plaintiff that they did not speak English, so Plaintiff sought further assistance from other Equinox employees and managers. *Id.* at ¶¶ 23-24. For a locker to be opened, the staff must write down the number of the locker they are going to open. Ex. 2, 151:18-25. No staff was able to verify the sign-sheet for Plaintiff. *Id., see also,* 152:2-5.

Plaintiff grew more upset, as no one at Equinox was able to provide him with any information or answers as to what happened in the locker room or how his lockers were opened.

3

*Id.* at ¶¶ 25-27; JSUF ¶ 40. To date, Plaintiff has not received any information about how his lockers were opened on December 19, 2019. Summit Decl. at ¶ 29; JSUF ¶ 41.

That same night, several Equinox employees e-mailed about the incident. When Grossman received the e-mail describing the incident and Plaintiff's alleged statements, she did not consider terminating Plaintiff. JSUF ¶ 48.

## IV.   Termination

On December 20, 2019, Plaintiff was questioned by Gerard Calvo, regional manager for Defendant, and Grossman. JSUF ¶ 55. An hour before the meeting and before any questioning of Plaintiff, Stephanie Hermann, regional director of people services, sent an e-mail to her supervisors informing them of "an expected GFI termination" that would be taking place "involving Curtis Summit." *See,* Exhibit 6; JSUF ¶¶ 50, 52; Ex. 3, 56:2-21. Hermann, the individual who recommended Plaintiff's termination, had not personally spoken to any of the alleged witnesses to the locker room incident. Ex. 3, 28:17-20. Hermann did not believe that Calvo or Grossman had spoken with any of the witnesses either. *Id.,* 28:21-23.

During the meeting where Plaintiff was questioned, he told Calvo and Grossman that he did not directly threaten any employees. JSUF ¶ 59; Summit Decl., ¶ 33. During the meeting, Grossman told him that Defendant was trying to find a way to get rid of him. Ex. 2, 142:9-12.

On December 20, 2019, just a few hours after Plaintiff had been questioned by Calvo and Grossman, he was terminated. JSUF ¶ 66. Plaintiff's termination was unrelated to the Juice Press incident. JSUF ¶ 65. Grossman was unaware of other employees losing their employment for violations of the workplace violence policy. Ex. 7, 57:9-12. Plaintiff had no similar prior incidents and no warnings for violations of the workplace violence policy. Summit Decl. at ¶ 28; JSUF ¶ 72.

Plaintiff felt the locker room incident was a set up as three lockers, not next to each other, were the only three lockers to have their contents strewn across the locker room floor. Summit Decl. at ¶ 27. Plaintiff did not understand how he was the victim and was ultimately terminated. Ex. 2, 153:7-10 ("I just wanna know why my belongings was tossed out of the locker. Then all of a sudden I get fired, I get blamed."), 155:6-7. Plaintiff voiced his concerns that he been set up to Calvo and Grossman. *Id.* Towards the end of the meeting with Calvo and Grossman, Grossman expressed to Plaintiff that Equinox was "trying to find a way to get rid of" him. *Id.* at ¶ 32.

Defendant's investigation was insufficient and supports that Plaintiff's termination was pretextual . Defendant did not obtain written statements from many alleged witnesses until after Plaintiff's termination. JSUF ¶ 45; Ex. 3, 19:11-16; 29:24-25-30:2-14. Hermann provided the recommendation for termination before receiving the written statements. Ex. 3, 33:19-22. Ten (10) days after Plaintiff's termination, Defendant obtained a written statement from Efrain, one of the maintenance employees working at the Flatiron Club in the locker room when Plaintiff returned after teaching class. *Id.* Efrain's statement was translated by another e-mail and does not contain any curse words or threats. *See,* Exhibit 5; Ex. 3, 50:17-24; 51:4-9.

## ARGUMENT

### I.   Summary Judgment Standard

"Summary judgment may not be granted unless 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" Fed. R. Civ. P. 56(c). Summary judgment is a drastic remedy which may be granted only

when there are no material issues of fact to be resolved at trial. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249 (1989) (at this stage, the judge's function is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial); *Gladstone v. Fireman's Fund Ins. Co.,* 536 F. 2d 1403, 1406 (2d Cir. 1976); *Howley v. Town of Stratford,* 217 F.3d 141, 150-51 (2d Cir. 2000) (the court must decide whether a fair-minded just could return a verdict for the non-movant on the evidence presented); *Auletta v. Tully,* 576 F. Supp. 191, 195 (N.D.N.Y. 1983) (summary judgment is not to be used as a substitute for trial, but only when it is clear that no genuine issues remain for trial).

The party seeking summary judgment bears the burden of establishing that no genuine issue of material fact exists. *See, Jacobsen v. New York City Health and Hospitals Corp.,* 22 N.Y. 3d 824, 833 (2014). The burden is a "heavy one." *William J. Jenack Estate Appraisers & Auctioneers, Inc. v. Rabizadeh,* 22 N.Y. 3d 470, 475 (2013); *Nationwide Life Ins. Co. v. Bankers Leasing Ass'n, Inc.,* 182 F.3d 157 (2d Cir. 1999) (the moving party bears a heavy burden of demonstrating the absence of any material issues of fact).

An award of summary judgment is appropriate only where, "after drawing all reasonable inferences in favor of the party against whom summary judgment is sought, no reasonable trier of fact could find in favor of the non-moving party." *Owens v. Amtrak (National R.R. Passenger Corp.),* 1990 WL 104025 at *2 (S.D.N.Y. July. 19, 1990). "In determining whether a genuine issue actually exists and, thus, whether or not summary judgment is appropriate, courts may 'not . . . weigh the evidence, but [are] instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments.'" *Hayut v. State Univ. of N.V.*, 352 F.3d 733, 743 (2d Cir. 2003); *Scalera v. Electrograph Systems, Inc.,* 848 F. Supp. 2d 352, 359 (E.D.N.Y. 2012) (denying

defendants' motion for summary judgment in its entirety), *citing Fischl v. Armitage,* 128 F. 3d 50, 56 (2d Cir. 1997) (if…there is any evidence in the record from which a reasonable inference could be drawn in favor of the opposing party, summary judgment is improper).

      **i.** **Courts Urge Caution in Granting Summary Judgment in Employment Discrimination Cases where Intent is at Issue**

Summary judgment is "generally inappropriate where questions of the defendant's state of mind are at issue and should thus be granted with caution in employment discrimination cases." *Fanelli v. New York,* 200 F. Supp. 3d 363, 370 (E.D.N.Y. 2016); *see also, Gelb v. Bd. of Elections of the City of N.Y.,* 224 F. 3d 149, 157 (2d Cir. 2000); *Matye v. City of New York,* 2015 WL 1476839 at *16 (E.D.N.Y. March 31, 2015) (where an employer's intent is at issue, the trial court must use extra caution in determining whether to grant summary judgment because direct evidence of discriminatory intent is rare); *Delville v. Firmenich Inc.,* 920 F. Supp. 2d 446, 458 (S.D.N.Y. 2013); *Lawrence v. State University of New York,* 2002 WL 31812700 at *3 (S.D.N.Y. Dec. 12, 2002); *Padilla v. Buffalo State College Foundation, Inc.,* 958 F. Supp. 124, 126 (W.D.N.Y. 1997) (trial courts should exercise "extra care" when deciding whether to grant summary judgment in employment discrimination cases); *Zimmerman v. Assocs. First Capital Corp.,* 251 F.3d 376, 382 (2d Cir. 2001) (the Court's task is to examine the entire record and make the case-specific assessment as to whether a finding of discrimination may reasonably be made).

Courts recognize that "employment discrimination is often accomplished by discreet manipulations and hidden under a veil of self-declared innocence." *Rosen v. Thornburgh,* 928 F.2d 528, 532 (2d Cir. 1991). Assessments of credibility and choices between conflicting versions of the events are matters for the jury, not the court, on summary judgment. *Jimenez v. Donahoe,* 968 F. Supp. 2d 609, 617 (S.D.N.Y. 2013). An employer's business decision may be called into question if "facts…exist from which a reasonable jury could conclude that the employer's business

decision was so lacking in merit as to call into question its genuineness." *Dister v. Continental Group, Inc.,* 859 F. 2d 1108, 1115 (2d Cir. 1988); *Hazeldine v. Beverage Media Ltd.,* 954 F. Supp. 697, 709 (S.D.N.Y. 1997) (although much of the evidence presented can be reduced to a "he said, she said" battle, it must be viewed in the light most favorable to plaintiff, with all reasonable inferences being drawn in her favor). The Second Circuit has noted that:

> Because writings directly supporting a claim of intentional discrimination are rarely, if ever, found among an employer's corporate papers, affidavits and depositions must be carefully scrutinized for circumstantial proof which, if believed, would show discrimination. *Gallo v. Prudential Residential Services,* 22 F.3d 1219, 1224 (2d Cir. 1994); *see also 300 Gramatan Ave. Assocs. V. State Div. of Human Rights,* 45 N.Y. 2d 176 (1978) (discrimination is rarely so obvious or its practices so overt that recognition of it is instant and conclusive, it being accomplished usually by devious and subtle means).

At this stage, Plaintiff "must establish a genuine issue of material fact…as to whether the employer's reason for discharging her is false and as to whether it is more likely that a discriminatory reason motivated the employer to make the adverse employment decision." *Gallo* at 1219; *Hurd v. JCB Intern. Credit Card Co. Ltd.,* 923 F. Supp. 492 (S.D.N.Y. 1996) (denying defendant's motion for summary judgment in part because trier of fact could conclude that termination for insubordination was discriminatory).

Plaintiff need not prove his case to defeat summary judgment. *Zuckerman v. City of New York,* 49 N.Y.2d 557, 562 (1980); *see also McDuffee v. J.P. Morgan Chase Bank,* 35 Misc. 3d 1230 (Sup. Ct. 2012). Plaintiff need only demonstrate that there are material factual issues in existence, such that a reasonable fact finder could resolve such issues in favor of the non-moving party. *Knight v. U.S. Fire Ins. Co.,* 804 F.2d 911 (2d Cir. 1986); *Gorzynski v. JetBlue Airways Corp.,* 596 F.3d 93, 106 (2d Cir. 2010) (plaintiff's job at this stage is not to convince the Court that it prevails…but rather to show that a genuine issue of material fact exists as to whether it can ultimately do so at trial). Direct evidence is not necessary and a plaintiff alleging discrimination is

"usually constrained to rely on the cumulative weight of circumstantial evidence." *Luciano v. Olsten Corp.,* 110 F.3d 210, 215 (2d Cir. 1997).  To succeed, plaintiff must show that there is a material issue of fact as to "whether 1) the employer's asserted reason for the challenged action is false or unworthy of belief and 2) more likely than not the employee's [age] was the real reason." *Hargett v. New York City Transit Authority,* 640 F. Supp. 2d 450, 475 (S.D.N.Y. 2009).

## II.    Plaintiff's *Prima Facie* Case of Discrimination

The Age Discrimination in Employment Act ("ADEA") prohibits an employer from discharging…or otherwise discriminating against an employee based on the employee's age. 29 U.S.C. § 623(a)(1). Plaintiff's state law claims are analyzed under the same burden-shifting framework as his federal claim. *Spiegel v. Schhlmann,* 604 F. 3d 72, 83 (2d Cir. 2010). "Claims under the City HRL must be reviewed independently from and more liberally than their federal and state counterparts." *Loeffler v. Staten Island Hosp.,* 582 F. 3d 268, 278 (2d Cir. 2009).

In the context of employment discrimination cases, the burden of proof that must be met to permit a plaintiff to survive a summary judgment motion at the *prima facie* stage is *de minimis. Sutera v. Schering Corp.,* 73 F. 3d 13, 16 (2d Cir. 1995). *See also, Levitant v. Hilt N.Y. Waldorf LLC,* 2012 WL 414515 at *4 (S.D.N.Y. Feb. 6, 2012); *Carlton v. Mystic Transp., Inc.,* 202 F.3d 129, 134 (2d Cir. 2000) (plaintiff's burden of establishing a prima facie case is not a heavy one); *Scaria v. Rubin,* 117 F.3d 652, 653 (2d Cir. 1997) (the burden of establishing a prima facie case is not onerous and has frequently been described as minimal).

"To make a *prima facie* showing of wrongful discharge under the ADEA, a plaintiff must demonstrate, 1) that he was within the protected age group, 2) that he was qualified for the position, 3) that he was discharged, and 4) that the discharge occurred under circumstances giving rise to an

inference of age discrimination." *Sutera,* at 16, *citing, Cronin v. Aetna Life Ins. Co.,* 46 F. 3d 196, 204 (2d Cir. 1995).

### i.       Inference of Discrimination

Here, the disputed issue is whether Plaintiff's termination occurred under circumstances giving rise to an inference of age discrimination. "Circumstances contributing to an inference of age-based employment discrimination may include: invidious comments about people in the protected age class; more favorable treatment of younger employees….a sequence of events leading to an employee's termination." *Miller v. National Ass'n of Securities Dealers, Inc.,* 703 F. Supp. 2d 230, 245 (E.D.N.Y. 2010). A plaintiff "can raise an inference of age discrimination by showing that [he] (1) as similarly situated to other younger employees, and (2) was treated less favorably than those employees." *Raspardo v. Carlone,* 770 F. 3d 97, 126 (2d Cir. 2014); *see also, Trachtenberg v. Department of Educ. Of City of New York,* 937 F. Supp. 2d 460, 470 (S.D.N.Y. 2013) (Engelmayer, J), *Williams v. Regus Management Group, LLC,* 836 F. Supp. 2d 159, 173 (S.D.N.Y. 2011) (under the City Human Rights Law, "the inference of discrimination prong of the prima facie case is satisfied if a member of a protected class was treated differently than a worker who was not a member of that protected class."

The "Second Circuit has continuously held that an inference of discrimination arises, for purposes of ADEA defendants' summary judgment motions, when an older qualified employee is replaced by someone younger." *D'Cunha v. Genovese/Eckerd Corp.,* 479 F. 3d 193, 195 (2d Cir. 2007) (finding an age difference of eight years raises an inference of discrimination); *see also, Piasecki v. Daugthers of Jacob Nursing Home, Inc.,* 808 F. Supp. 1136, 1141 (S.D.N.Y. 1992) ("Furthermore, plaintiff was replaced by a younger man. This also suggests age discrimination.").

"At this stage, the Court's role is not to weigh evidence and try issues but rather to determine whether there are issues to be tried." *Jaroslawicz v. Seedman,* 528 F. 2d 727, 731 (2d Cir. 1975).

Plaintiff has submitted evidence i) of discriminatory comments made to him (including as recently as the last night of employment); ii) that he was treated differently from younger fitness instructors; iii) that the individual who recommended his termination did so before Plaintiff was even interviewed; iv) that the locker room incident where Plaintiff's three lockers, and nothing else, were opened with his belongings thrown on the floor, was a set up to trigger Plaintiff; and v) that after termination, his job responsibilities were shifted to younger employees.

Contrary to Defendant's allegations, the comments directed towards Plaintiff were far more than stray remarks. Several were within close proximity (i.e. weeks) of Plaintiff's termination and comments were made by Mr. Diaz on the night before Plaintiff's termination. Such temporal proximity cannot be ignored.

Plaintiff's testimony about the comments made towards him is sufficient to establish his *prima facie* case. *Smith v. North Shore-Long Island Jewish Health System,* 286 F. Supp. 3d 501, 516 (E.D.N.Y. 2018) ("A reasonable jury could credit Smith's testimony and readily conclude that retaliatory animus motivated Defendant's adverse employment actions towards her."); *see also, Holtz v. Rockefeller & Co.,* 258 F. 3d 62, 78 (2d Cir. 2001) (finding plaintiff's largely uncorroborated accounts to be sufficient to raise a genuine issue of fact as to the defendant's intent; *Back v. Hastings on Hudson Union Free Sch. Dist.,* 365 F. 3d 107, 124 (2d Cir. 2004) (holding uncorroborated discriminatory comments may constitute direct evidence adequate to make out a prima facie case").

Plaintiff has thus made the *de minimis* showing required to establish a *prima facie* case of age discrimination. *Sutera,* at 17.

### ii.    Plaintiff's Showing of Pretextual Termination

"If the plaintiff satisfies this initial burden, the burden shifts to the defendant to articulate a legitimate, non-discriminatory reason for its actions." *St. Mary's Honor Center v. Hicks,* 509 U.S. 502, 506-507 (1993). "Even if the defendant offers a legitimate, nondiscriminatory explanation for its actions, summary judgment is not warranted if the plaintiff can show that an explanation was pretext." *Ehrbar v. Forest Hills Hosp.,* 131 F. Supp. 3d 5, 20 (E.D.N.Y. 2015). Defendant contends that it terminated Plaintiff for violating its workplace violence policies.

Following Defendant's legitimate, nondiscriminatory reason for termination, "[p]laintiff may still prevail if he can show that defendant's decision to terminate him was, in fact, the result of age discrimination" and whether plaintiff has "raised sufficient evidence upon which a reasonable jury could conclude by a preponderance of the evidence that [his] age was a 'but for' cause of [defendant's] decision to fire him." *Miller,* at 247; *see also, Holz v. Rockefeller & Co., Inc.,* 258 F. 3d 62, 78 (2d Cir. 2001) (plaintiff must show that "the prohibited factor was at least one of the motivating factors"); *Carlton v. Mystic Transp., Inc.,* 202 F. 3d 129, 135 (2d. Cir. 2000) (ADEA plaintiff must prove that "age was at least one of the motivating factors in the decision").

The "plaintiff can meet its burden by showing that the defendant's proffered reasons were pretextual or were not the only reasons and that the prohibited factor was at least one of the motivating factors." *Anyanwu v. City of New York,* 2013 WL 5193990 at *11 (S.D.N.Y. Sept. 16, 2013); *see also, Gorzynski,* at 107-109 (denying summary judgment, finding pretext for purposes of plaintiff's ADEA claim, in part due to a questionable investigation); *Weber v. Parfums*

*Givenchy, Inc.,* 49 F. Supp. 2d 343, 346 (S.D.N.Y. 1999) ("A rational trier of fact could find that these comments indicated that the real reason for plaintiff's termination was that certain of defendant's employees…harbored an animus against plaintiff based on her age.").

Plaintiff can show pretext "by demonstrating weaknesses, implausibilities, inconsistencies, or contradictions in the employer's proffered legitimate, [nondiscriminatory] reasons for its action." *Graziadio v. Culinary Inst. Of Am.,* 817 F. 3d 415, 430 (2d Cir. 2016). "Direct evidence is not necessary, and a plaintiff charging discrimination against an employer is usually constrained to rely on the cumulative weight of circumstantial evidence." *Epstein v. Kalvin-Miller Intern., Inc.,* 139 F. Supp. 2d 469, 476 (S.D.N.Y. 2001), *citing, Luciano v. Olsten Corp.,* 110 F.3d 210, 215 (2d Cir. 1997). "[T]he question of pretext, like an inference of discrimination, goes to the state of mind…making summary judgment inappropriate except in extraordinary cases." *Fressler v. New York City Dept. of Educ.,* 2012 WL 1038600 at *10 (S.D.N.Y. Mar. 29, 2012) (denying summary judgment as to the issue of pretext and as to plaintiff's ADEA claim), *citing, Ramseur v. Chase Manhattan Bank,* 865 F. 2d 460, 465 (2d Cir. 1989). Plaintiff "may preclude summary judgment by producing evidence from which the trier of fact reasonably could draw an inference of discrimination." *Sorlucco v. New York City Police Dept.,* 888 F. 2d 4, 7 (2d Cir. 1989).

Plaintiff must demonstrate "that the proffered reason was not the true reason for the employment decision but was in fact a pretext for discrimination." *St. Mary's Honor Center* at 515. "[T]he issue for purposes of this summary judgment motion is whether there is a genuine issue of fact as to whether the reasons proffered by defendant for discharging plaintiff were a pretext for discrimination." *Duffy v. State Farm Mut. Auto. Ins. Co.,* 927 F. Supp. 587, 595 (E.D.N.Y. 1996).

Although Defendant presented a nondiscriminatory reason for termination, the evidence supports that there is a genuine question of material fact as to whether Plaintiff's conduct constitutes a violation and whether it was the true reason for termination. Plaintiff made no specific threats at any given employee and did not act in a physically violent manner. Plaintiff was upset, and responded as such, given the circumstances of his personal belongings being thrown to the floor and his three lockers opened.

Given the number of comments surrounding Plaintiff's age and their temporal proximity to his termination, the questionable investigation which failed to account for witness statements, the recommendation to terminate Plaintiff before interviewing him about the incident and the replacement by younger employees, at this stage, Plaintiff has presented sufficient evidence to allow a jury to conclude that his termination was pretextual. *See, Ireton-Hewitt v. Champion Home Builders Co.,* 501 F. Supp. 2d 341, 352 (N.D.N.Y. 2007) (denying summary judgment where, "Taken as a whole, the sequence of the circumstantial evidence in which Koch terminated Ireton-Hewitt after allegedly making ageist comments, replacing him with a younger employee, and allegedly subjecting him to disparate treatment, raises genuine issues of material fact regarding whether defendant terminated plaintiff because of his age").

### III.   Distinguishing Cases Relied Upon by Defendant

Defendant argues that Plaintiff failed to state a material action required for a *prima facie* claim of age discrimination, ignoring that Plaintiff suffered an indisputable adverse employment action - termination. *Kessler v. Westchester County Dept. of Social Services,* 461 F. 3d 199, 204 (2d Cir. 2006). Plaintiff cites distinct examples of disparate treatment where he was treated differently from, and less favorably than, younger employees as evidence of discriminatory intent and an inference of discrimination. *Mandell v. County of Suffolk,* 316 F. 3d 368, 379 (2d

14

Cir. 2003) ("A showing of disparate treatment…is a recognized method of raising an inference of discrimination for purposes of making out a *prima facie* case."). However, the ultimate and undisputed adverse employment action is his termination.

Plaintiff's case is distinguishable from several relied upon by Defendant. Defendant relies on *Mathirampuzha v. Potter,* 548 F.3d 70 (2d. Cir. 2008) and *Golston-Green v. City of New York,* 123 N.Y.S. 3d (2d Dept 2020) to evidence that Plaintiff failed to state an adverse employment action, but the plaintiffs in *Mathirampuzha* and *Golston-Green* were not terminated, differentiating them from Plaintiff. Further, in *Golston-Green,* the Court concluded that the "adverse employment action need not be material in order to be actionable under the City Human Rights Law," establishing that Plaintiff's allegations could, at the very least, survive under the City Human Rights Law. *Golston-Green,* at 666 (holding that plaintiff need only establish that he was "treated less well than other employees on the basis of a protected characteristic").

Defendant also relies on *Sullivan v. NYC Department of Investigation,* 163 F. Supp. 3d 89 (S.D.N.Y. 2016) for the proposition that a verbal reprimand without further consequence does not support an adverse employment action. However, the Court in *Sullivan* clearly stated, "To be sure, plaintiff did experience one adverse employment action at her time with NYCHA: her termination." *Id.,* at 98. The Court also found that plaintiff could not prove pretext, in part, because she did not claim that any statements were made about her age, race, gender or religion. To the contrary, Plaintiff contends that several statements were made by employees and decision makers relating to his age and potential retirement.

Defendant's reliance on *Bahnsen v. Town of Brookhaven,* 2019 WL 7575951 (E.D.N.Y. Dec. 16, 2019) is also misplaced. There, the Court denied summary judgment where plaintiff specifically mentioned years of service and salary, not age, as the reason for termination. *Id.,* at

11, ("Moreover, the allegation in Plaintiff's affidavit in opposition to summary judgment, i.e., that the Town targeted high wage earners – who, because of seniority were also older workers – is insufficient to raise an inference of discrimination."). Here, Plaintiff clearly testified that age was the reason for termination, supported by comments, differential treatment and an alleged set up to end his employment.

Defendant attempts to diminish Plaintiff's testimony relating to age-related comments made in the workplace, in part, because they occurred throughout the duration of his employment and not contemporaneously with termination. However, the fact that comments were made "well before" termination "does not undercut their probative value." *Wallace v. Esper,* 2019 WL 4805813 at *7 (S.D.N.Y. Sept. 30, 2019).

## <u>CONCLUSION</u>

Because genuine issues of material fact exist as to whether and how age played a role in Plaintiff's termination, Plaintiff respectfully requests that the Court deny Defendant's motion for summary judgment in its entirety.

Dated:  New York, New York
　　　　September 28, 2021

*/s/ Brittany Weiner*
Brittany Weiner, Esq.
Imbesi Law Group P.C.
1501 Broadway, Suite 1915
New York, New York 10036
Tel. (646) 767-2271
Fax. (212) 658-9177
brittany@lawicm.com
*Attorneys for Plaintiff*

16